IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | |
|---|---|
| **DEANGELO BRADLEY,** | **CASE NO. 1:21-CV-00397-PAB** |
| **Plaintiff,** | |
| -vs- | **JUDGE PAMELA A. BARKER** |
| **DICILLO SERVICES, LLC, et al.,** | **MEMORANDUM OPINION AND** |
| **Defendants.** | **ORDER** |

This matter comes before the Court upon the Motion for Default Judgment filed by Plaintiff DeAngelo Bradley ("Plaintiff" or "Bradley") on September 30, 2021, seeking default judgment against Defendants DiCillo Services, LLC ("DiCillo Services") and Nicholas DiCillo ("DiCillo") (collectively, "Defendants") under Rule 55(b) (the "Motion") (Doc. No. 18.) For the following reasons, Plaintiff's Motion is GRANTED.

I.      **Factual Background and Procedural History**

On February 19, 2021, Bradley filed a Complaint on behalf of himself and all others similarly situated against Defendants, alleging violations of the Fair Labor Standards Act ("FLSA"), 29 U.S.C. § 207, *et seq.* and the Ohio Minimum Fair Wage Standards Act ("OMFWSA"), R.C. § 4111.01, *et seq.* (Doc. No. 1.) Therein, Bradley asserts four claims for relief: (1) Count I: Violation of the FLSA – Failure to Pay Minimum Wage (asserted on behalf of Bradley and others); (2) Count II: Violation of the FLSA – Failure to Pay Overtime (asserted on behalf of Bradley and others); (3) Count III: Violation of the OMFWSA – Failure to Pay Minimum Wage (asserted by Bradley individually); and (4) Count IV: Violation of the OMFWSA – Failure to Pay Overtime (asserted by Bradley individually). Although Bradley originally filed his Complaint as a collective action under the FLSA,

in his Motion he asserts that he "has determined to abandon collective relief in this matter of [sic] receiving judgment solely on his claims."[1] (Doc. No. 18 at PageID# 56.) Accordingly, the Court will evaluate the Motion solely with regard to Bradley's claims and requested relief.

Bradley is a former employee of DiCillo Services, who was hired as a Lawncare Maintenance Worker on May 8, 2019 and paid on an hourly basis. (Doc. No. 1 at ¶¶ 15-16.) Bradley's hours were recorded electronically by his direct supervisor, Jose Martinez. (*Id.* at ¶ 17.) Bradley alleges that he worked 80 hours during the week of May 13, 2019 and reported the hours he worked during that week directly to DiCillo by text message. However, Defendants only paid Bradley for 46.3 hours for that week. (*Id.* at ¶¶ 20-22; Doc. No. 18-1 at ¶¶ 14-16.) Similarly, Bradley alleges that he worked 53.5 hours during the week of May 20, 2019, reported those hours to DiCillo by text message, and was not paid at all for the hours he worked during that week. (*Id.* at ¶¶ 23-25; Doc. No. 18-1 at ¶¶ 17-18.) As a result of repeatedly not being paid properly, Bradley resigned his employment with Defendants on June 2, 2019. (*Id.* at ¶ 31.) Bradley alleges that he was only paid twice during his total employment with Defendants—once, for his first week of employment, and once, for the week of May 13, 2019 for fewer hours than he actually worked. (*Id.* at ¶ 32.) Subsequent to his resignation, Bradley continued to communicate with DiCillo by text message in an effort to get paid for all the hours he had worked. (*Id.* at ¶ 35.) However, Bradley avers that DiCillo ignored his text messages and that Defendants willfully and intentionally failed to pay him for all the hours he worked as part of a deliberate wage theft scheme. (*Id.* at ¶¶ 36-37.) Bradley alleges that Defendants' failure and refusal to pay him appropriately was willful, intentional, and not in good faith. (*Id.* at ¶ 38.)

---

[1] The Court has amended the case caption on this Memorandum Opinion and Order to remove the mention of "*On behalf of himself and all others similarly situated*," which otherwise appears on the docket. Bradley has abandoned his class claims and the instant Motion seeks default judgment on his individual claims.

2

The docket reflects that after unsuccessful attempts to serve Defendants via mail during May and June 2021 (*see, e.g.*, Doc. Nos. 9, 12-13), Plaintiff served the summons and Complaint upon Defendants via a process server on July 2, 2021. (Doc. Nos. 11, 11-1.) Thereafter, Bradley filed an Application for Entry of Default under Fed. R. Civ. P. 55(a) on August 17, 2021, indicating that through personal service upon Nicholas DiCillo, service was simultaneously perfected as to DiCillo Services, for which DiCillo is the registered statutory agent and a member, manager, and/or officer of the company. (Doc. No. 15 at PageID# 50; *see also* Doc. No. 18-3.)

The Clerk entered default against Defendants on August 17, 2021. (Doc. No. 16.) On September 30, 2021, Plaintiff filed the instant Motion. (Doc. No. 18.) As Defendants are in default and have thus far failed to respond to the lawsuit, there has been no Opposition filed thereto. Accordingly, the Motion is ripe for a decision.

**II.     Standard of Review**

Following the clerk's entry of default pursuant to Rule 55(a) and the party's motion for default judgment under Rule 55(b), "the complaint's factual allegations regarding liability are taken as true, while allegations regarding the amount of damages must be proven." *P&G Health & Longterm Disability Plan v. Molinary*, No. 1:18-cv-283, 2019 WL 358936, at *1 (S.D. Ohio Jan. 29, 2019) (quoting *Morisaki v. Davenport, Allen & Malone, Inc.*, No. 2:09-cv-298, 2010 WL 3341566, at *1 (E.D. Cal. Aug. 23, 2010)). Specifically, this Court is required to "conduct an inquiry in order to ascertain the amount of damages with reasonable certainty." *Osbeck v. Golfside Auto Sales, Inc.*, No. 07-14004, 2010 WL 2572713, at *4 (E.D. Mich. June 23, 2010). To do so, the civil rules "require that the party moving for a default judgment must present some evidence of its damages." *Mill's*

*Pride, L.P. v. W.D. Miller Enterprises, LLC*, No. 2:07-cv-990, 2010 WL 987167, at *1 (S.D. Ohio Mar. 12, 2010).

Rule 55(b)(2) "allows but does not require the district court to conduct an evidentiary hearing" regarding damages. *Vesligaj v. Peterson*, 331 F. App'x 351, 354-55 (6th Cir. 2009). An evidentiary hearing is not required if the Court can determine the amount of damages by computation from the record before it. *HICA Educ. Loan Corp. v. Jones*, No. 4:12 CV 962, 2012 WL 3579690, at *1 (N.D. Ohio Aug. 16, 2012). The Court may rely on affidavits submitted on the issue of damages. *Schilling v. Interim Healthcare of Upper Ohio Valley, Inc.*, No. CIV A 206-CV-487, 2007 WL 152130, at *2 (S.D. Ohio Jan. 16, 2007); *see also P&G Health & Longterm Disability Plan*, 2019 WL 358936, at *1.

### III. Analysis

Upon review of the record in this case, the Court finds that default judgment is warranted. Defendants' failure to respond to the Complaint, entry of default, or Motion for Default Judgment has made it clear that Defendants have no intention of defending this action. The Court accepts the allegations set forth in the Complaint as true and, therefore, finds that Defendants are liable under the FLSA and the OMFWSA.

#### A. Joint and Several Liability

First, the Court finds that Defendants are jointly and severally liable to Bradley. "The Sixth Circuit uses the 'economic reality' test to determine 'whether a person is an employer responsible for FLSA obligations.'" *Becker v. Sam Gildersleeve & Son Plumbing, Inc.*, No. 1:20-cv-2359, 2021 WL 4348260, at *1 (N.D. Ohio Sept. 24, 2021) (quoting *U.S. Dep't of Labor v. Cole Enterprises, Inc.*, 62 F.3d 775, 778 (6th Cir. 1995)). Under this test, "a corporate officer who has operational control of

the corporation's covered enterprise is an employer under FLSA, along with the corporation itself." *Id.* (quoting *Cole Enterprises*, 62 F.3d at 778). Ohio Secretary of State filings indicate that DiCillo is the statutory agent of DiCillo Services and Bradley avers that DiCillo directly supervised him and said he was the owner of the company. (Doc. No. 18-1 (Decl. of DeAngelo Bradley) at ¶ 5.) "DiCillo is and was at all times referenced [in the Complaint] the president, co-owner, and/or principal of DiCillo Services." (Doc. No. 1 at ¶¶ 5-6.) The Court finds that Defendants are both liable under the FLSA. For example, "[o]ne who is the chief executive officer of a corporation, has a significant ownership interest in it, controls significant functions of the business, and determines salaries and makes hiring decisions has operational control and qualifies as an 'employer' for the purposes of FLSA." *Cole Enterprises*, 62 F.3d at 778. Moreover, Defendants are jointly liable under the OMFWSA. *See, e.g.*, *Stargel v. Lewaro Constr., Inc.*, No. 3:16-cv-47, 2017 WL 3600431, at *3 (S.D. Ohio Aug. 17, 2017) ("There is no significant difference between how 'employer' . . . [is] defined under the OMFWSA vis-a-vis the FLSA . . . and FLSA and OMFWSA claims are analyzed 'in a unitary fashion.'" (citing *Douglas v. Argo-Tech. Corp.*, 113 F.3d 67, 69 n.2 (6th Cir. 1997)).

Having established liability, the Court must now determine the extent of the damages and any reasonable attorney's fees and costs.

### B. Unpaid Wages and Liquidated Damages

In his Motion, Bradley argues that determining his unpaid wages is simple because "Bradley is in possession of contemporaneous time records -- text messages to Di[C]illo reporting the hours Bradley worked." (Doc. No. 18 at PageID# 58; *see also* Doc. No. 18-1 at PageID#s 67-68.) Bradley's Motion contains a declaration attesting to the work he performed as an employee of Defendant, his hourly wage, and the hours for which he was not properly compensated. The Motion also sets forth a

5

detailed chart summarizing the unpaid wages to which he is entitled. Therein, he indicates that for the week of May 13-19, 2019, he is entitled to $143.50 in unpaid wages; for the week of May 20-26, 2019, he is entitled to $515.14; and for the week of May 27-June 2, 2019, he is entitled to $348.41. (Doc. No. 18 at PageID# 60.) This equals a total of $1,007.05 owed in unpaid wages. (*Id.*)

Moreover, Bradley argues that absent a showing of good faith by Defendants, 29 U.S.C. § 216(b) provides for an award of liquidated, or double, Bradley's damages. Section 216(b) provides in relevant part:

> Any employer who violates the provisions of section 206 or section 207 of this title shall be liable to the employee or employees affected in the amount of their unpaid minimum wages, or their unpaid overtime compensation, as the case may be, and in an additional equal amount as liquidated damages.

29 U.S.C. § 216(b). Accordingly, because Defendants are in default and have made no showing of good faith, Bradley is entitled to an additional $1,007.05 in liquidated damages. The combined total of the unpaid wages and liquidated damages is $2,014.10.

C. **Attorney's Fees and Costs**

In addition to unpaid wages and liquidated damages, Bradley seeks an award of attorney's fees and costs. (Doc. No. 18 at PageID# 62.) The FLSA provides that, "[t]he court . . . shall, in addition to any judgment awarded to the plaintiff or plaintiffs, allow a reasonable attorney's fee to be paid by the defendant, and costs of the action." 29 U.S.C. § 216(b); *see also* R.C. § 4111.10(A) (providing for "costs and reasonable attorney's fees"). "'The most useful starting point for determining the amount of a reasonable fee' is the lodestar method." *Thomas v. GC Restaurants, LLC*, No. 3:20-cv-300, 2021 WL 4147818, at *3 (S.D. Ohio Sept. 13, 2021) (quoting *Hensley v. Eckerhart*, 461 U.S. 424, 433 (1983)). "That figure is reached 'by multiplying the reasonable number

6

of hours billed by a reasonable billing rate.'" *Id.* (quoting *Paschal v. Flagstar Bank*, 297 F.3d 431, 434 (6th Cir. 2002) (quotation omitted)).

Counsel for Bradley, Attorney Chris Wido ("Wido"), represents that he expended 26.80 billable hours on this FLSA case. (Doc. No. 18 at PageID# 62.) Wido's billable rate in this matter was $375.00 per hour, which is below "the amount called for per hour in Plaintiff's contingency fee contract with The Spitz Law Firm, LLC for Partners like Wido." (*Id.*; Doc. No. 18-2 (Decl. of Chris Wido) at ¶ 8; PageID# 73.) Wido avers that The Spitz Law Firm has not been paid anything for its work in this matter thus far and that the firm assumed all risk in this matter as it relates to the costs of litigation. (Doc. No. 18-2 at ¶¶ 9-10.) The total amount of attorney's fees Bradley requests is $10,023.75 and that amount is reflected in Wido's billable time entries attached to the Motion. (Doc. No. 18 at PageID# 62; Doc. No. 18-2 at PageID#s 80-81.)

Moreover, Bradley seeks costs incurred through the litigation, including a $402.00 filing fee, $255.00 for a process server, and $392.00 in administrative costs. (*Id.* at PageID# 62; Doc. No. 18-2 at PageID# 82.) Bradley therefore seeks a total of $1,049.00 in costs. (*Id.*)

The Court finds that Bradley's evidence is sufficient to establish damages in the amount of $2,014.10 (representing unpaid wages and liquidated damages). Further, Bradley has submitted sufficient evidence to establish his entitlement to reasonable attorney's fees and costs in the amount of $10,023.75 and $1,049.00, respectively.

IV. **Conclusion**

Plaintiff's Motion for Default Judgment (Doc. No. 18) is GRANTED. Default judgment is entered in Plaintiff's favor against Defendants, jointly and severally, for $2,014.10 in damages, $10,023.75 in attorney's fees, and $1,049.00 in costs, equaling a combined total sum of $13,086.85.

    **IT IS SO ORDERED.**

Date:  February 4, 2021

       *s/Pamela A. Barker*
    PAMELA A. BARKER
    U.S. DISTRICT JUDGE